UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RAYMOND HAUGEN, JR., | |
| Petitioner, | Case No. 2:10-CV-258-CWD |
| v. | **MEMORANDUM DECISION AND ORDER** |
| MICHAEL J. ASTRUE, Commissioner of Social Security Administration, | |
| Respondent. | |

## INTRODUCTION

Currently pending before the Court for its consideration is the Petition for Review (Dkt. 1) filed on May 19, 2010, by Petitioner Raymond Haugen Jr. ("Petitioner") of the Respondent's denial of social security benefits. The Court has reviewed the Petition for Review and the Answer, the parties' memoranda, and the administrative record ("AR"), and for the reasons that follow, will affirm the decision of the Commissioner.

## PROCEDURAL AND FACTUAL HISTORY

Petitioner filed an application for Disability Insurance Benefits and Supplemental Security Income on December 5, 2007, alleging disability due to left knee pain and low

back pain. The application was denied initially and on reconsideration, and a hearing was held on  August 18, 2009, before Administrative Law Judge ("ALJ") Robert Chester. ALJ Chester heard testimony from Petitioner and vocational expert Diane Kramer. ALJ Chester issued a decision finding Petitioner not disabled on September 4, 2009, and Petitioner timely requested review by the Appeals Council, which denied his request for review on March 24, 2010. (AR 1–4.)

Petitioner appealed this final decision to the Court. The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

At the time of the hearing, Petitioner was fifty one years of age. Petitioner completed high school, has one year of post-secondary education, and completed an apprenticeship in the roofing trade. Petitioner's prior work experience includes work as a roofer and as a customer service representative in a sports card and memorabilia store.

## SEQUENTIAL PROCESS

The Commissioner follows a five-step sequential evaluation for determining whether a claimant is disabled.  *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, it must be determined whether the claimant is engaged in substantial gainful activity. The ALJ found Petitioner had not engaged in substantial gainful activity since his alleged onset date. At step two, it must be determined whether the claimant suffers from a severe impairment. The ALJ found Petitioner's low back pain and osteoarthritis of the left knee were severe impairments within the meaning of the Regulations.

Step three asks whether a claimant's impairments meet or equal a listed

impairment. The ALJ found that Petitioner's impairments did not meet or equal the criteria for the listed impairments, and specifically considered Listing 1.02 ,1.04, and 14.09. If a claimant's impairments do not meet or equal a listing, the Commissioner must assess the claimant's residual functional capacity ("RFC") and determine at step four whether the claimant has demonstrated an inability to perform past relevant work.

The ALJ found Petitioner was not able to perform his past relevant work as a roofer, but could perform his past relevant work as a store manager or cashier. Therefore, the ALJ found Petitioner not disabled at step four of the sequential process.

Because the Commissioner found Petitioner could perform his past relevant work, the Commissioner did not proceed to step five.[1]

## STANDARD OF REVIEW

Petitioner bears the burden of showing that disability benefits are proper because of the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A); *Rhinehart v. Fitch*, 438 F.2d 920, 921 (9th Cir. 1971). An individual will be determined to be disabled only if his physical or mental

---

[1] If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to other work that exists in significant levels in the national economy, after considering the claimant's residual functional capacity, age, education and work experience.

impairments are of such severity that he not only cannot do his previous work but is

unable, considering his age, education, and work experience, to engage in any other kind

of substantial gainful work which exists in the national economy. 42 U.S.C. §

423(d)(2)(A).

On review, the Court is instructed to uphold the decision of the Commissioner if

the decision is supported by substantial evidence and is not the product of legal error. 42

U.S.C. § 405(g); *Universal Camera Corp. v. Nat'l Labor Relations Bd.*, 340 U.S. 474

(1951); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (as amended); *DeLorme v.*

*Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence is such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is more than a scintilla but less than

a preponderance, *Jamerson v Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997), and "does not

mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552,

565 (1988).

The Court cannot disturb the Commissioner's findings if they are supported by

substantial evidence, even though other evidence may exist that supports the petitioner's

claims. 42 U.S.C. § 405(g); *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1453,

1457 (9th Cir. 1995). Thus, findings of the Commissioner as to any fact, if supported by

substantial evidence, will be conclusive. *Flaten*, 44 F.3d at 1457. It is well-settled that, if

there is substantial evidence to support the decision of the Commissioner, the decision

must be upheld even when the evidence can reasonably support either affirming or

reversing the Commissioner's decision, because the Court "may not substitute [its]

judgment for that of the Commissioner." *Verduzco v. Apfel*, 188 F.3d 1087, 1089 (9th Cir.

1999).

When reviewing a case under the substantial evidence standard, the Court may

question an ALJ's credibility assessment of a witness's testimony; however, an ALJ's

credibility assessment is entitled to great weight, and the ALJ may disregard self-serving

statements. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Where the ALJ

makes a careful consideration of subjective complaints but provides adequate reasons for

rejecting them, the ALJ's well-settled role as the judge of credibility will be upheld as

based on substantial evidence. *Matthews v. Shalala*, 10 F.3d 678, 679-80 (9th Cir. 1993).

## DISCUSSION

Petitioner argues the ALJ erred at steps three and four. First, Petitioner contends

that his impairments, specifically his osteoarthritis of his left knee, meets the listing

criteria of § 1.02(A). Second, Petitioner contends that the ALJ's Residual Functional

Capacity ("RFC") assessment is not supported by substantial evidence, specifically the

finding that Petitioner could perform light work with a sit/stand option. Third, Petitioner

contends that the ALJ failed to present clear and specific reasons for rejecting Petitioner's

testimony and finding him less than fully credible. And finally, Petitioner disputes that his

past work as a store manager supports the ALJ's finding that such work constitutes "past

relevant work." Petitioner asserts that his treating physician's assessment of his RFC

corresponds with Vocational Rule 201.14, and directs a finding of disabled because the

base of sedentary work is significantly eroded due to his limitations and he has no transferrable skills.

Respondent refutes the above claims contending that, while Petitioner does experience pain, his condition does not meet the requirements of a listed impairment. Respondent contends that sufficient evidence in the record supports the ALJ's findings that Petitioner was less than fully credible, and that the RFC assessment is supported by substantial evidence in the record. Respondent argues that it was appropriate for the vocational expert to consider Petitioner's work in a retail establishment and assume that he could perform work as a cashier or store manager. And finally, Respondent asserts that the letter submitted from his treating physician was submitted after the close of the evidence, and Petitioner has not shown good cause for having failed to produce the evidence earlier. Therefore, Respondent argues the letter should not be considered.

## 1. Whether Petitioner's Impairments Meet or Equal a Listing

The ALJ found that Petitioner's impairments did not meet or equal any listing, specifically considering Listing 1.02, 1.04, and 14.09. Petitioner argues that the impairments to his left knee meet or equal Listing 1.02A, and that the ALJ committed error at step two. Petitioner asserts that he suffers from chronic knee pain and stiffness, and that clinical findings show a gross anatomical deformity as well as joint space narrowing. Petitioner contends that he cannot ambulate effectively because he is unable to walk two blocks over uneven ground at a reasonable pace and his knee interferes with activities of daily living.

If the claimant satisfies the criteria under a listing and meets the twelve month duration requirement, the Commissioner must find the claimant disabled without considering age, education and work experience. 20 C.F.R. § 404.1520(a)(4)(iii), (d). A claimant bears the burden of producing medical evidence that establishes all of the requisite medical findings that his impairments meet or equal any particular listing. *Bowen v. Yuckert,* 482 U.S 137, 146, n. 5 (1987). Further, if the claimant is alleging equivalency to a listing, the claimant must proffer a theory, plausible or other, as to how his combined impairments equal a listing. *See Lewis v. Apfel,* 236 F.3d 503, 514 (9th Cir. 2001).

Listing 1.02 pertains to musculoskeletal impairments and major dysfunction of a joint, due to any cause. Such dysfunction is characterized by:

> gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b; or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

The "inability to ambulate effectively" is defined as:

> an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the

individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)

(2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Appendix 1 to Subpart P of Part 404—Listing of Impairments.

The ALJ found that Petitioner did not suffer from gross anatomical deformity and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint with joint space narrowing. While the ALJ failed to elaborate, the ALJ did make factual findings concerning the extent of Petitioner's joint deformity and range of motion, (AR 19), and the record as a whole supports the ALJ's finding in this regard. While Petitioner may have chronic pain documented in the record, most recently, on May 27, 2008, Petitioner's treating orthopaedist Dr. Brewster examined

Petitioner, and found his knee to be "stable" with the ability to "fully extend[] his knee," with "satisfactory joint space present." (AR 19, 472.) These findings are inconsistent with the listing criteria.

Even if the ALJ improperly considered the medical evidence with respect to his finding that Petitioner's knee did not demonstrate gross anatomical deformity, joint pain and stiffness, accompanied by incomplete range of motion, there is no error considering the record supports a finding that Petitioner is able to ambulate effectively. The ALJ did not consider at step two Petitioner's inability to ambulate effectively. Instead, the ALJ proceeded pursuant to Listing 1.02(B), finding that Petitioner did not have the inability to perform fine and gross movements effectively. However, Petitioner did not have any impairment in his upper extremities, and the Court finds it was error for the ALJ to base his decision at step 2 under Listing 1.02(B).

But, in this instance the ALJ's error was harmless. *Burch v. Barnhart*, 400 F.3d 676, 678 (9th Cir. 2005) ("A decision of the ALJ will not be reversed for errors that are harmless."). When it is clear from the record that an ALJ's error was "inconsequential to the ultimate nondisability determination, an error is considered harmless. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006).

Petitioner's medical records as a whole support the conclusion that Petitioner was able to ambulate effectively. The ALJ considered Petitioner's ability to ambulate elsewhere in his decision, finding that Petitioner could walk albeit with a slight limp, was able to walk on his toes and heels, could walk without the use of a cane, and was able to

walk with a normal gait between 1998 and 2003. (AR 19.) Although Petitioner testified

he was unable to walk two blocks over uneven ground at a reasonable pace, ineffective

ambulation requires a finding that the individual cannot ambulate without the use of

hand-held assistive devices. The evidence in the record indicates that, as late as April

2007, Petitioner was moving "without significant difficulty." (AR 308.) On May 27,

2008, Dr. Brewster noted that, although Petitioner walked "with a slight limp," there was

no indication that Petitioner used or required a cane, walker, or other assistive device.

According to Petitioner's records, no physician prescribed any assistive device.

The ALJ found also that Petitioner was able to perform household chores, drive

and shop by himself, and care for himself, contrary to a finding of ineffective ambulation.

(AR 20.) Petitioner testified he was able to mow the lawn, and that he went shopping by

himself sometimes. (AR 47.) On his disability function report dated May 10, 2008,

Petitioner indicated he prepared coffee and breakfast, was able to care for his cat, and

performed household chores. (AR 170.) Petitioner indicated he was able to drive by

himself, and that he used his cane only when his knee caused him to limp. (AR 173, 176.)

The ALJ's findings concerning Petitioner's ability to ambulate effectively,

although considered elsewhere in his opinion, are supported by substantial evidence in the

record. The Court finds that the ALJ applied the correct legal standards at step two of his

analysis, and to the extent the ALJ based his conclusion on Listing 1.02(B), such error

was harmless because the error was inconsequential to the ultimate nondisability

determination. Substantial evidence in the record supports the ALJ's determination that

Petitioner's osteoarthritis of his knee did not meet the criteria for Listing 1.02.

## 2. Credibility

Petitioner contends that the ALJ failed to present clear and specific reasons for rejecting his testimony concerning the severity, persistence, and limiting effects of his pain. The ALJ found Petitioner's testimony not entirely credible based upon the inconsistencies between the Petitioner's testimony, his treatment record, and his daily activities. Petitioner testified that he is in constant pain due to his back and knee condition and is limited to sitting in a chair no longer than thirty minutes. He stated that he could stand so long as he was not climbing stairs, and walk provided it was not for a long time, or on uneven surfaces. He stated also that walking for prolonged periods would cause him to limp, and he would need to stop to rest, apply ice, and take pain medications. Petitioner testified that his lifting ability is limited, restricted to 15 pounds, and his medications make him groggy. (AR 17, 35, 37, 39, 41.) The ALJ concluded Petitioner's allegations regarding the intensity, persistence and limiting effects of his pain symptoms were inconsistent with the following: (1) Petitioner's treating physicians' opinions; (2) consultative treating physicians' opinions; (3) Petitioner's activities of daily living; (4) the conservative treatment regimen prescribed for Petitioner; and (5) Petitioner's failure to follow his prescribed medication management and treatment regimen.

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's findings must be supported by specific, cogent reasons. *Reddick*, 157

F.3d at 722. If a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints of pain based solely on lack of medical evidence. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). *See also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (holding that an ALJ may not discredit a claimant's subjective testimony on the basis that there is no objective medical evidence that supports the testimony). Unless there is affirmative evidence showing that the claimant is malingering, the ALJ must provide clear and convincing reasons for rejecting pain testimony. *Burch*, 400 F.3d at 680. General findings are insufficient; the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints. *Reddick*, 157 F.3d at 722.

The reasons an ALJ gives for rejecting a claimant's testimony must be supported by substantial evidence in the record. *Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1296 (9th Cir. 1999). If there is substantial evidence in the record to support the ALJ's credibility finding, the Court will not engage in second-guessing. *Thomas v. Barnhart*, 278 F.3d 957, 959 (9th Cir. 2002). When the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

In evaluating credibility, the ALJ may engage in ordinary techniques of credibility evaluation, including considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony, or between claimant's testimony and conduct, claimant's daily activities, claimant's work record, and testimony from physicians and

third parties concerning the nature, severity and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Also, the ALJ may consider the location, duration and frequency of symptoms; factors that precipitate and aggravate those symptoms; the amount and side effects of medications; and treatment measures taken by the claimant to alleviate those symptoms. *See* Soc. Sec. Ruling 96-7p.

A failure to follow prescribed treatment may be used as sufficient evidence to support a conclusion that a claimant is not credible in describing symptoms about pain, and form the basis for finding the complaint unjustified or exaggerated. *Orn v. Astrue*, 495 F.3d 625, 637-638 (9th Cir. 2007).

Here, Petitioner has shown that he suffers from a medically-established back and knee impairment that could reasonably be expected to produce pain and reduced mobility. Therefore, his subjective testimony about his pain can be rejected only for clear and convincing reasons. Accordingly, the Court must determine whether the ALJ's adverse credibility finding is supported by substantial evidence under the clear and convincing standard.

The ALJ rejected Petitioner's testimony about the limiting effects of his pain based upon contradictions in Petitioner's medical records. While it is undisputed that Petitioner underwent back surgery and suffered a severe injury from a fall on May 4, 1998, and underwent eight knee surgeries on his left knee after the injury, Petitioner's treating and consultative physicians opined that Petitioner can work despite his physical limitations. Contradiction with the medical record "is a sufficient basis for rejecting the claimant's

subjective testimony." *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). Reports of treating physicians submitted relative to Petitioner's work-related ability are persuasive evidence of a claimant's disability due to pain and his inability to engage in any form of gainful activity. *Gallant v. Heckler*, 753 F.3d 1450, 1454 (9th Cir. 1984). More weight is accorded to the opinion of a treating source than to nontreating physicians. *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir.1987).

The medical records indicated that surgical repair occurred on May 4, 1998, to repair the fracture to Petitioner's left knee. Orthopedist Dr. Brewster provided post-operative treatment. On April 23, 2001, Dr. Brewster recommended vocational rehabilitation to allow Petitioner to work at a sedentary job. (AR 275; *See also* AR 280, 287.) This sentiment was previously set forth by Dr. Pike, a second consultative orthopedist, who examined Petitioner on June 8, 1999, and who also opined that Petitioner would be able to perform a job where he was not on his feet continuously and not doing much climbing, bending, or squatting. (AR 386.) Dr. Pike examined Petitioner again on September 4, 2002, and continued to be of the opinion Petitioner could return to work with modified activities. (AR 415.)

On April 30, 2003, Dr. Brewster examined Petitioner during a follow up exam, indicated that nothing further surgically could be done to alleviate Petitioner's pain, and that pain medications would be required for pain management. (AR 259.) On May 13, 2003, Dr. Stevens performed an independent medical exam, found Petitioner "medically stable," and that he could return to work but not as a roofer. (AR 450–63.) In addition, Dr.

Stevens noted that drug therapy was for maintenance purposes only, that Petitioner was not currently on a significant amount of medication, and that Petitioner did not exhibit an altered gait pattern. (AR 462.)

Dr. Magnuson, one of Petitioner's consulting physicians for pain management, treated him on October 22, 2003. Dr. Magnuson acknowledged that Petitioner reported his pain was throbbing, sharp, and burning, with activity and walking exacerbating the pain. (AR 249.) However, Dr. Magnuson noted Petitioner's gait was "normal," and he recommended conservative treatment with analgesics, ice, heat, and wearing a knee brace. (AR 249–50.)

Beginning in June of 2003 and continuing through 2004, Petitioner established care with Dr. Borsheim for medication management. Dr. Borsheim noted that Dr. Brewster could do nothing further surgically for Petitioner. (AR 293--297.) Dr. Borsheim recorded in his progress notes that, overall, Petitioner "seems to be doing okay." (AR 294.) As of June 28, 2004, Dr. Borsheim recorded that Petitioner walked with a "bit" of a limp, but that there was no swelling, no new symptoms, and that the present pain regimen was "tolerable." (AR 297.)

On March 22, 2005, Dr. Brewster referred Petitioner for a second orthopaedic opinion to see if further surgery, a distal femoral osteotomy, was appropriate. (AR 257). On May 26, 2005, consulting orthopedists Dr. Sciba and Dr. Keeve examined Petitioner, noted no knee instability, full extension, but limited flexion to 115/120 degrees. (AR 255). They did not recommend any further surgical intervention. (AR 255.)

On March 17, 2006, Dr. Borsheim saw Petitioner for a follow up examination noting that, overall, Petitioner was "doing fine, not having real significant difficulties," and that Petitioner reported he felt "as if things are stable." (AR 304.) At the same visit, however, Petitioner simultaneously reported his knee had "slowly gotten worse," but his "pain medications [were] adequate." Although Dr. Borsheim noted on this visit that Petitioner moved with difficulty, on September 18, 2006, Dr. Borsheim noted that Petitioner moved "without significant difficulty" and that nothing was different. (AR 306.)

On Petitioner's January 8, 2007, follow up visit to Dr. Borsheim, upon reporting he had increased his activity, Petitioner reported being in more pain despite a change in his medications. (AR 307.) However. Dr. Borsheim reported that, overall, despite walking with difficulty Petitioner was "doing okay." (AR 307.) On April 19, 2007, the changed pain medication regimen reportedly "continues to work well for him," keeps pain at a tolerable level, he had discontinued using Percocet for breakthrough pain, and was able to use over-the-counter medication in conjunction with Oxycontin to manage his pain. (AR 308.) On this visit, Dr. Borsheim noted specifically that Petitioner "actually moves without significant difficulty." (AR 308.) On July 19, 2007, Petitioner reported being "more active," with increased pain. (AR 309.)

In August of 2007, Petitioner established care with Dr. Hughes at Prairie Family Medicine for medication management. (AR 337). Because he had not seen his orthopedist for quite some time, Dr. Hughes referred him to follow up with Dr. Brewster. Dr.

Brewster saw Petitioner on May 27, 2008, and indicated x-rays showed satisfactory joint space in his left knee. (AR 471–72.) Upon examination, Petitioner exhibited a slight limp, full extension, was able to walk on his toes and heels, and his knee was stable. (*Id.*)

Petitioner's current treating physician, osteopath Dr. Smith, referred Petitioner to Dr. Ispirescu on June 30, 2009, for pain management. (AR 476.) Dr. Ispirescu noted that Petitioner complained of low back pain and knee pain, but had no recommendations other than to continue management of Petitioner's pain with medication, and he recorded that he saw no further changes that had developed. (AR 476.) Dr. Smith indicated on November 6, 2009, that although Petitioner suffers from significant debility related to his knee and low back, she was of the opinion that "sedentary work with the ability to change positions frequently" would accommodate Petitioner's limitations, along with restrictions of no lifting greater than 15 pounds, no repetitive pivoting, reaching or squatting, and no working on unlevel surfaces or walking over uneven ground. (AR 213.)

As for Petitioner's back, an x-ray of his lumbar spine on May 8, 2009, as compared with films from May 27, 2008, indicated lumbar vertebral bodies "are normal in height and alignment," "disk space intervals are well-maintained," and there is no evidence of "spondylolysis or spondylolisthesis," "no bony destructive lesions," and that "facet joints and sacroiliac joints are within normal limits." (AR 492.)

The ALJ relied upon all of the above, especially Petitioner's more recent care in 2008 and early 2009, and specifically noted that "the record does not contain any opinions from treating or examining sources indicating that the claimant is disabled or

even has limitations greater than those determined in this decision." (AR 19–20.) The ALJ gave weight to Petitioner's medical provider treatment records, and the treatment records provided opinions as to Petitioner's work related abilities contrary to Petitioner's assertions that pain precluded him from all work. (*See* Brief at 11.) The treatment records that the ALJ rejected all dealt with operative procedures, and did not include any significant opinion regarding Petitioner's prognosis or abilities. (*See* Brief at 11, AR 20.) However, the records discussed above, and relied upon by the ALJ, showed significant discrepancies when compared to Petitioner's testimony as to Petitioner's ability to work. Thus, the Court concludes that the reasons relied upon by the ALJ for challenging Petitioner's credibility are supported by substantial evidence in the record.

Petitioner next contends that it was error to rely upon Petitioner's activities of daily living to discredit his testimony. The ALJ noted that Petitioner reported he could care for his pets, cook simple meals, drive, go out alone, attend barbeques, visit his parents, attend his doctor's appointments, mow the lawn, and take care of some chores. The ALJ's assessment of Petitioner's activities is supported by substantial evidence in the record. (AR 171–74.)

Petitioner reported that he mowed his small lawn and that he accompanied his girlfriend to the grocery store. (AR 47.) On his disability function report dated May 10, 2008, Petitioner reported that he makes coffee, starts the fire, makes breakfast, can do household chores, cares for his pets, and can care for himself personally. (AR 170–71.) On January 26, 2000, Dr. Brewster's notes indicated Petitioner was outside shoveling.

(AR 285.) On July 13, 2000, Dr. Oscamp, a reviewing orthopedist for the State Insurance Fund, noted that he watched a "video demonstrating [Petitioner] being able to perform normal activities," which indicated that "he might be able to return to work as he appears to be able to perform at least moderate work type activities." (AR 411-12.) During the summer of 2007, Petitioner reported being "more active." (AR 309.) The Court concludes that the ALJ's findings are based upon substantial evidence in the record, and support the ALJ's conclusion that Petitioner's daily activities are inconsistent with his allegations of disability.

As for the ALJ's reliance on Petitioner's conservative course of treatment, such treatment can undermine allegations of debilitating pain but is not a proper basis for rejecting the claimant's credibility where the Petitioner has a good reason for not seeking more aggressive treatment. *Carmickle*, 533 F.3d at 1162. Petitioner was specifically prescribed a conservative treatment regimen because he was not a candidate for a total knee replacement due to his age. (AR 250, 265, 291.) Dr. Brewster on May 28, 2002, noted that "there was no treatment" that would give him a normal knee, (AR 265), and on April 30, 2003, was of the opinion that there was nothing further surgically to offer him. (AR 259). Dr. Smith on November 6, 2009, agreed that no further orthopaedic treatment would be beneficial. (AR 213.) Petitioner declined injections in his left knee because prior injections were of limited success. (AR 257, 263, 268, 285.)

The conservative course of treatment prescribed for Petitioner is not a proper basis for finding Petitioner not credible in this case. However, the ALJ's reliance on this as a

reason for discrediting Petitioner's credibility was harmless error. So long as there remains "'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion," such error is harmless and does not warrant reversal. *Carmickle*, 533 f.3d at 1162. The ALJ's remaining reasoning and ultimate credibility determination is adequately supported by substantial evidence in the record based upon his assessment of the medical records and Petitioner's daily activities.

Finally, the ALJ relied on Petitioner's failure to follow his treatment regimen and his conservative treatment regimen. Petitioner contends that such reliance was error. The ALJ noted that Petitioner was "consistently noncompliant with medical treatment," missed appointments, did not seek treatment for left knee pain until 2007, and had declined treatment from medical providers. (AR 18.) In addition, the ALJ pointed out that Petitioner appeared at the hearing without his prescribed knee brace. (AR 18.)

The ALJ's findings that Petitioner was noncompliant with his treatment regimen are supported by substantial evidence in the record. Petitioner had tripped on March 19, 2003, while not wearing his knee brace. (AR 260.) On September 14, 2007, Petitioner's primary care provider documented that Petitioner was not wearing his knee brace, because Petitioner wanted his knee to wear out faster. (AR 335.) Petitioner was not wearing his brace the day of the hearing because it was uncomfortable. (AR 39.) Petitioner also tested positive for marijuana on December 12, 2007, and had not been taking his prescribed pain medications. (AR 339–41.)

**MEMORANDUM DECISION AND ORDER - 20**

The ALJ's decision finding Petitioner less than fully credible is valid, despite the error in relying upon Petitioner's conservative course of treatment. Therefore, the ALJ's credibility determination is accepted.

**3. Residual Functional Capacity**

At the fourth step in the sequential process, the ALJ determines whether the impairment prevents the claimant from performing work which the claimant performed in the past, i.e., whether the claimant has sufficient residual functional capacity to tolerate the demands of any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). A claimant's residual functional capacity is the most he can do despite his limitations. 20 C.F.R. § 404.1545(a). An ALJ considers all relevant evidence in the record when making this determination. *Id.* Generally, an ALJ may rely on vocational expert testimony. 20 C.F.R. § 404.1566(e); *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). An ALJ must include all limitations supported by substantial evidence in his hypothetical question to the vocational expert, but may exclude unsupported limitations. *Bayliss*, 427 F.3d at 1217. The ALJ need not consider or include alleged impairments that have no support in the record. *See Osenbrock v. Apfel*, 240 F.3d 1157, 1163–64 (9th Cir. 2000).

Petitioner contends that the ALJ's RFC assessment finding Petitioner capable of performing light work with a sit/stand option, and no exposure to hazzards, is not supported by substantial evidence because the evidence indicates Petitioner is not capable of a full range of sedentary work. Petitioner relies upon SSR 96-9p, which states that a

limitation of standing and walking for only a few minutes during each work day would erode the unskilled sedentary occupational base significantly, and requires the ALJ to be specific as to the frequency of an individual's need to alternate sitting and standing.

The ALJ specifically found Petitioner capable of light work as defined by 20 C.F.R. 404.1567(b), with a sit/stand option. The ALJ noted that light work consists of the ability to lift and/or carry and push and/or pull up to 10 pounds frequently and 20 pounds occasionally; sit up to 6 hours in an 8 hour work day with normal breaks; stand and/or walk at least 6 hours in an 8 hour day with normal breaks; and occasionally stop. The ALJ further limited Petitioner to occasional use of ramps and stairs, limited balancing, stooping, kneeling, crouching and crawling.

In this case, SSR 96-9p is not applicable. The Ruling sets forth policy regarding the impact of an RFC assessment for less than a full range of sedentary work. However, in this case, the ALJ found that Petitioner could perform light work, with additional limitations, rendering SSR 96-9p inapplicable.

The ALJ relied upon the opinion of the state agency medical consultant, Dr. Coolidge, who offered an opinion concerning Petitioner's work-related functional abilities. (AR 376–83.) Dr. Coolidge on May 22, 2008, assessed Petitioner's work related ability and found he could frequently lift 10 pounds, occasionally lift 20 pounds, sit and/or walk with normal breaks for 6 hours in an 8 hour work day; sit for 6 hours; and occasionally climb, balance, stoop or crouch.

The ALJ's reliance upon Dr. Coolidge's assessment is supported by substantial

evidence in the record. The medical records summarized above indicate that Petitioner could work with limitations, such as not lifting more than 15 pounds, alternating sitting and standing, and performing more sedentary type work. As of November 6, 2009, Dr. Smith was of the opinion that Petitioner could work. (AR 497.)[2] Petitioner also indicated the same types of restrictions in his own physical capacity report. (AR 175.)

The Court finds the ALJ's RFC assessment incorporated the opinions of Petitioner's medical care providers, is supported by substantial evidence, and was not the product of legal error.

## 4. Past Relevant Work

Past work experience is considered "relevant if it was done within the last fifteen years, lasted long enough for [Petitioner] to learn to do it, and was substantial gainful activity. The burden is on the claimant to prove that [he] cannot perform past relevant work." *Vertigan v. Halter*, 260 F.3d 1044, 1051 (9th Cir. 2001) (internal citations omitted). Petitioner has the burden also to demonstrate that he cannot perform prior relevant work "either as actually performed or as generally performed in the national economy." *Carmickle*, 533 F.3d at 1166.

Petitioner identified that he was a store manager between 1993 and 1995 at a

---

[2] Respondent objects to the consideration of Dr. Smith's November 6, 2009 letter, because it was submitted after the hearing and the ALJ did not have the benefit of considering it prior to his determination. (Mem. at 11, Dkt. 18.) However, the Court finds that, even had the ALJ considered the letter, it would not have altered the ALJ's RFC assessment, because the letter provides support for the ALJ's credibility finding and his RFC assessment finding Petitioner capable of light work with limitations.

sports card store. (AR 50.) It was a small shop, and he was the only employee who managed the store besides the owner. (AR 46.) He stated that he managed the store, sold cards and collectibles, performed customer service, and handled invoices and shipments that arrived at the store. (AR 183.) He often lifted 25 pounds, and occasionally lifted 50 pounds. The vocational expert was of the opinion that such work was the equivalent of work as a store manager or cashier under DOT Codes 185.167-046 and 211.462-010 respectively, and met the limitations of the ALJ's RFC assessment. Based upon the vocational expert's opinion, the ALJ determined that Petitioner could perform his past relevant work as generally performed and was therefore not disabled. (AR 20.) Petitioner argues that the ALJ erred by assuming Petitioner's work as a customer service representative in a sports memorabilia store was the equivalent to work as either a cashier or store manager.

The DOT is "the best source for how a job is generally performed." *Carmickle*, 533 F.3d at 1166 (quoting *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir.2001)). In classifying prior work, the ALJ must keep in mind that every occupation involves various tasks that may require differing levels of physical exertion. It is error for the ALJ to classify an occupation "according to the least demanding function." *Id.* (quoting *Valencia v. Heckler*, 751 F.2d 1082, 1086 (9th Cir.1985)).

The Dictionary of Occupational Titles defines a retail store manager duties as an individual "engaged in selling specific line of merchandise, or general line of merchandise," who either personally performs or supervises others performing the

following duties: "Plans and prepares work schedules and assigns employees to specific duties. Formulates pricing policies on merchandise according to requirements for profitability of store operations. Coordinates sales promotion activities and prepares, or directs workers preparing, merchandise displays and advertising copy. Supervises employees engaged in sales work." *Dictionary of Occ. Titles* 185.167-046, 1991 WL 671299. The Dictionary classifies a retail store manager as "light work," level 4, with a specific vocational preparation level of 7 requiring over two years of experience.

The Court finds the ALJ did not err in relying upon the vocational expert's testimony that Petitioner's past work in the sports card store was equivalent to work as a retail store manager. Petitioner objects, arguing that he did not supervise employees. However, the Dictionary indicates that supervision of others is one possible component, considering the Dictionary clearly indicates he can "personally" perform duties, or supervise others. Second, Petitioner objects on the grounds he was an "assistant," and did not actually perform any duties as described in the dictionary. However, Petitioner stated he "managed" the store, sold merchandise, and prepared invoices.

Third, Petitioner contends the ALJ misclassified the position according to its least demanding function, considering Petitioner actually was on his feet extensively and lifted up to 50 pounds. But every job may have different requirements. That Petitioner may have lifted up to 50 pounds in his prior job is not equivalent to misclassifying a job according to its least demanding function. The ALJ correctly determined that, as generally performed, the job of retail sales manager was most equivalent to Petitioner's

past work in the sports card store and constituted "light," not sedentary, work. And finally, Petitioner disputes that the record supports he performed this work for more than two years. However, the record indicated, and Petitioner testified, that he worked at the store between 1993 and 1995, more than two years.

Even if the ALJ improperly considered Petitioner's work in the store equivalent to a retail store manager, Petitioner makes no argument concerning the ALJ's alternative determination that Petitioner could perform work as a cashier, other than contending that Petitioner did not testify he used a cash register. (Mem. at 12, Dkt. 14; Reply at 3, Dkt. 20.) However, use of a cash register is not required to meet the definition of a cashier.

A Cashier II must be able to perform the following duties: "Receives cash from customers or employees in payment for goods or services and records amounts received: Recomputes or computes bill, itemized lists, and tickets showing amount due, using adding machine or cash register. Makes change, cashes checks, and issues receipts or tickets to customers. Records amounts received and prepares reports of transactions. Reads and records totals shown on cash register tape and verifies against cash on hand. May be required to know value and features of items for which money is received. May give cash refunds . . ." *Dictionary of Occ. Titles* 211.462-010, 1991 WL 671840 (emphasis added).

Petitioner testified that he handled invoices and sold merchandise, and he was the sole employee other than the owner. The Dictionary considers only a short demonstration up to and including one month of experience relevant. It was therefore reasonable for the

ALJ to consider and assume Petitioner may not have "managed" the store, but rather worked more as a customer service individual handling transactions in the store.[3] And according to the Dictionary, Petitioner is not required to use a cash register. Therefore, it was not error for the ALJ to consider Petitioner's past relevant work met the requirements of work as a cashier, and the ALJ's determination that Petitioner could perform his past relevant work was supported by substantial evidence in the record.

## CONCLUSION

Based upon review of the entire record, the Court finds that the Commissioner's decision is supported by substantial evidence and is not the product of legal error. Therefore, the Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act will be affirmed.

---

[3] The Court considers the ALJ's assumption reasonable considering Petitioner, in his reply brief, indicated Petitioner performed "many additional duties not included in the job title of store manager. For instance, he used the cash register, perform [sic] customer service, invoice, shipping and receiving . . . only a portion of the time would actually be spent in the management duties." (Reply at 3, Dkt. 20.) Petitioner's argument supports the ALJ's determination that Petitioner may not have actually performed duties equivalent to a store manager, but rather performed the lesser included duties of a cashier.

## ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1) Plaintiff's Petition for Review (Dkt. 1) is **DISMISSED**.

2) The Commissioner's decision finding that the Petitioner is not disabled within the meaning of the Social Security Act is **AFFIRMED.**

DATED: July 12, 2011

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge